**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 6, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

GEORGE OCHOA,

Movant,

v.

No. 06-6349

MARTY SIRMONS, Warden,
Oklahoma State Penitentiary,

Respondent.

**MOTION TO FILE SECOND OR SUCCESSIVE
PETITION FOR WRIT OF HABEAS CORPUS**

James L. Hankins, Oklahoma City, Oklahoma, for Movant.

Jennifer B. Miller, Assistant Attorney General (W.A. Drew Edmondson,
Attorney General for Oklahoma, with her on the brief), Oklahoma City,
Oklahoma, for Respondent.

Before **TACHA**, Chief Judge, **BALDOCK**, and **MURPHY**, Circuit Judges.

**PER CURIAM**.

George Ochoa was convicted of first degree murder and sentenced to death
in 1996. *See Ochoa v. State*, 963 P.2d 583 (Okla. Crim. App. 1998). With the
denial of his first federal habeas petition still under review on appeal, he now

seeks to challenge his sentence on the basis that he is mentally retarded and hence ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002). He contends he is entitled to proceed on this new claim for two reasons: (1) because his first habeas action has not been finally resolved, the claim is not "second or successive" for purposes of 28 U.S.C. § 2244(b) and thus may be brought without need of this court's authorization under the statute; and (2) if such authorization is necessary, he has made the "prima facie showing," required by § 2244(b)(3)(C), that his claim satisfies the conditions for proceeding on a second or successive habeas petition under the new-rule-of-law provision in § 2244(b)(2)(A). After review of Mr. Ochoa's motion to proceed on the *Atkins* claim, we ordered formal briefing and oral argument.[1] We now hold that the pendency of an appeal from the denial of a first petition does not obviate the need for authorization of newly raised claims, but that Mr. Ochoa has made the prima facie showing required for authorization to proceed under § 2244(b)(2)(A).

Mr. Ochoa's first habeas petition was denied in 2001. He appealed that disposition to this court, but, following the Supreme Court's 2002 decision in *Atkins*, he returned to state court to pursue an *Atkins* claim while his first habeas

---

[1] While 28 U.S.C. § 2244(b)(3)(D) provides that a motion for authorization of a second or successive petition should be resolved within thirty days, this time limit is "hortatory or advisory rather than mandatory." *Browning v. United States*, 241 F.3d 1262, 1263 (10th Cir. 2001) (en banc) (quotation omitted); *accord In re Williams*, 330 F.3d 277, 280 (4th Cir. 2003) (collecting cases). This case "represents the more complex situation for which that limit is not practicable." *Browning*, 241 F.3d at 1264.

appeal was abated. Unlike defendants tried after *Atkins*, who can raise the issue of mental retardation in their initial criminal prosecution, *see Blonner v. State*, 127 P.3d 1135 (Okla. Crim. App. 2006) (discussing procedure for resolving *Atkins* defense), Mr. Ochoa had to pursue his claim in the post-conviction context. On the basis of preliminary evidentiary proceedings, the Oklahoma Court of Criminal Appeals ordered a trial on the issue of Mr. Ochoa's mental retardation, which ultimately resulted in the denial of his *Atkins* claim. *See Ochoa v. State*, 136 P.3d 661 (Okla. Crim. App.), *cert. denied*, 127 S. Ct. 680 (2006). The procedural and substantive adequacy of that proceeding is contested, but that is beyond the scope of our consideration here. With his state remedies exhausted, Mr. Ochoa filed his motion for leave to pursue habeas relief under *Atkins*.

Before turning to the issues raised by that motion, we emphasize that Mr. Ochoa falls within a narrow category of habeas petitioners. Obviously only those facing the death penalty may even invoke *Atkins*. And *Atkins* reflects one of the rare instances in which the Supreme Court has announced a new rule of constitutional law that it has also expressly made retroactively applicable to cases on collateral review.[2] Finally, Mr. Ochoa was not only convicted before *Atkins* but had also filed and been denied relief on his first habeas petition by that time.

_____

[2] We accept the State's concession on this point. The Supreme Court's anticipatory holding on the retroactivity of the *Atkins* rule in *Penry v. Lynaugh*, 492 U.S. 302, 329-30 (1989), has been thoroughly explained elsewhere. *See, e.g., In re Holladay*, 331 F.3d 1169, 1172-73 (11th Cir. 2003) (collecting cases); *Davis v. Norris*, 423 F.3d 868, 879 (8th Cir. 2005).

-3-

Our decision today authorizes the pursuit of a second or successive petition in light of this unique combination of circumstances.

### The Need for § 2244(b) Authorization

Mr. Ochoa argues as a threshold matter that authorization under § 2244(b) is unnecessary so long as his first habeas action has not been finally adjudicated on appeal. He relies on a Second Circuit case, *Whab v. United States*, 408 F.3d 116 (2d Cir. 2005), for this proposition. No other circuit has followed *Whab*, and we decline to do so. While this court has not addressed the precise procedural argument made here, it is clearly precluded by general principles in our case law addressing various attempts to circumvent § 2244(b) requirements, particularly following the Supreme Court's decision in *Gonzalez v. Crosby*, 545 U.S. 524 (2005) (deeming Fed. R. Civ. P. 60(b) motion that interjects new claims into habeas action a second or successive petition under § 2244(b)).

In *United States v. Nelson*, 465 F.3d 1145, 1148-49 (10th Cir. 2006), we held that a request to add new claims after the district court has adjudicated a habeas action must be preceded by a motion to vacate under Rule 60(b) and that, per *Gonzalez*, § 2244(b) applies to the Rule 60(b) motion as if it were a stand-alone second or successive petition. *See also United States v. Pedraza*, 466 F.3d 932, 933-34 (10th Cir. 2006) (holding post-judgment effort to raise new claim by motion under Rule 59(e) is likewise equivalent of second or successive petition under § 2244(b)). Consistent with *Nelson*, Mr. Ochoa may pursue his

*Atkins* claim only by securing authorization through a motion under § 2244(b). Any other procedure used to raise the new claim, however ostensibly associated with his initial habeas action, is properly deemed such a motion.

Mr. Ochoa emphasizes that in *Nelson*, unlike here, no appeal was pending in the first habeas action when new claims were raised by post-judgment motion. But this procedural circumstance has nothing to do with the relevance of *Nelson* to our analysis. The point is that § 2244(b) authorization is required whenever *substantively* new claims are raised; procedural associations with prior habeas matters must not obscure the fact that the petitioner is really pursuing a second or successive petition. Given this basic point, nothing in *Gonzalez*, *Nelson*, or our other cases suggests that whether a Rule 60(b) motion or other procedural vehicle may be used to circumvent § 2244(b) depends on the incidental fact that an appeal is or is not pending from the underlying habeas proceeding.[3]

The approach advocated by Mr. Ochoa would greatly undermine the policy against piecemeal litigation embodied in § 2244(b). Multiple habeas claims could be successively raised without statutory constraint for as long as a first habeas case remained pending in the system. If the proper treatment of post-judgment

_____

[3]    Indeed, § 2244(b) may not be circumvented by injecting new claims into a habeas action even while it is still pending *in the district court*. In *United States v. Espinoza-Saenz*, 235 F.3d 501 (10th Cir. 2000), we held that the district court correctly "treat[ed] [a] supplemental [§ 2255] motion as a successive petition instead of as an amendment which related back to his timely [original] motion," *id.* at 503, where it "was not clarifying, but instead sought to assert claims totally separate and distinct . . . from those raised in [the] original motion," *id.* at 505.

proceedings in habeas, carefully explained in *Gonzalez* to prevent procedural circumvention of § 2244(b), left open an exception this broad, that point would have been made explicit in the statute or, at least, in the Supreme Court's primary decision implementing the statute.

We conclude that Mr. Ochoa's *Atkins* claim is second or successive within the meaning of § 2244(b). Accordingly, we turn to his alternative argument that his claim satisfies the conditions for authorization under § 2244(b)(2)(A).

**Second or Successive Authorization under § 2244(b)(2)(A)**

The State concedes that Mr. Ochoa's *Atkins* claim satisfies the conditions stated in § 2244(b)(2)(A), i.e., the claim "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Nevertheless, the State opposes authorization because, it contends, Mr. Ochoa's "prima facie showing" under § 2244(b)(3)(C) must also include a preliminary demonstration of mental retardation that he has not made. We find no basis in the plain language and functional structure of the statute to expand our gatekeeping role to include such a merits review. Having satisfied the conditions in § 2244(b)(2)(A), Mr. Ochoa is entitled to proceed on his *Atkins* claim in the district court.

**1. Merits Review under §§ 2244(b)(2)(A) & 2244(b)(3)(C)**

Section § 2244(b)(3)(C) directs the appellate court to determine whether the petitioner has "ma[d]e a prima facie showing that [his] application *satisfies*

-6-

*the requirements of this subsection.*" (Emphasis added). This statutory mandate does not direct the appellate court to engage in a preliminary merits assessment. Rather, it focuses our inquiry solely on the conditions specified in § 2244(b) that justify raising a new habeas claim, i.e., the claim relies on a new rule of law made retroactive on collateral review by the Supreme Court, 28 U.S.C. § 2244(b)(2)(A), or involves new facts clearly and convincingly showing that, but for the alleged constitutional error, no reasonable jury would have found the petitioner guilty of the offense, 28 U.S.C. § 2244(b)(2)(B). The conditions in § 2244(b)(2)(A), with which we are concerned, look solely to temporal issues relating to the *availability* of the constitutional authority invoked, not to any assessment regarding the strength of the petitioner's case.[4]

---

[4] In contrast, what is often referred to as the "innocence" component in § 2244(b)(2)(B) imposes a merits-type condition to which the prima facie showing attaches (though even this does not directly concern the merit of the constitutional claim itself but rather the extent to which its predicate facts undercut the jury's finding of guilt). This difference between § 2244(b)(2)(A) claims resting on new rules of constitutional law, which require a showing only that a rule is retroactively applicable on collateral review, and § 2244(b)(2)(B) claims resting on rules of law previously available to the petitioner, which require a showing of new facts compellingly demonstrating that, absent the alleged error, no reasonable jury would have found the petitioner guilty of the offense, is essential to keep in mind. Cases reflecting something akin to merits review in the evaluation of claims under § 2244(b)(2)(B), such as *Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997) (holding prima facie showing must suggest "possible merit to warrant a fuller exploration by the district court"), may be correct in themselves, but they lead to error if reflexively imported into the § 2244(b)(2)(A) context. As noted later, this error undercuts case law cited by the State for conducting merits review of *Atkins* claims under § 2244(b)(2)(A).

Nor is the authorization process structured to suggest an inquiry beyond the conditions specified in § 2244(b)(2). The typical authorization proceeding is an ex parte matter, with little if any factual record, that is to be decided–conclusively, if denied[5]–in thirty days. These parameters indicate a streamlined procedure with a narrow focus on a fixed set of pre-specified and easily assessed criteria, which would be disrupted by engaging the manifold merits issues raised by potentially complex, fact-bound constitutional claims. Moreover, the authorization process is assigned to an *appellate* court, whose institutional role ordinarily excludes evidence-gathering and fact-finding of the sort implicated, for example, in the State's demand that we make a determination in the first instance whether Mr. Ochoa is in fact mentally retarded. The distribution of judicial responsibility reflected in the plain language of the statute–by which the appellate court makes an expedited assessment of whether a new habeas claim falls within a formally defined category and, if it does, then leaves the adjudication of that claim to the district court in the first instance–is clearly in keeping with the respective roles of appellate and trial courts in our system.

---

[5] Under § 2244(b)(3)(E), the grant or denial of § 2244(b)(2) authorization is not appealable and may not be the subject of a petition for rehearing or for a writ of certiorari. If authorization is granted, of course, the case proceeds in the district court, which under § 2244(b)(4) has final say regarding satisfaction of § 2244(b)(2) conditions, subject to ordinary appellate review following the entry of judgment in the event a certificate of appealability is granted with respect to the issue, *see LaFevers v. Gibson,* 238 F.3d 1263, 1266-67 (10th Cir. 2001).

We have never directly addressed the broad question whether § 2244(b) review includes a merits-screening of proposed second or successive claims. But our decision in *Hatch v. Oklahoma*, 92 F.3d 1012 (10th Cir. 1996), *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001), excluding exhaustion issues from the authorization inquiry strongly implies that merits review is not a part of our gatekeeping role in the process:

> This claim [a § 2244(b)(2)(A) claim based on the Supreme Court's then-recent abrogation of Oklahoma's scheme for handling trial competency issues in *Cooper v. Oklahoma*, 517 U.S. 348 (1996)] is not exhausted. . . . Exhaustion is not, however, a precondition to our consideration of this Application for Order Authorizing a Successive Petition for Habeas Corpus Relief. Were we to grant this application, the district court would then have before it the merits of Hatch's habeas petition, and in that context the district court would need to decide whether the claim was exhausted or whether waiver of the exhaustion requirement is warranted. In this proceeding, however, we are merely performing a gatekeeping function. Exhaustion of the *Cooper* claim is not a prerequisite to our consideration of the question whether a successive application is appropriate [under the conditions specified in . . . 28 U.S.C. § 2244(b)(2)].

*Id*. at 1016 (citation omitted).

The broader point implied in *Hatch* received more explicit recognition by the Fourth Circuit in *In re Williams*, 330 F.3d 277 (4th Cir. 2003), which stated that authorization under § 2244(b)(2) turns on "the possibility that the claims in a successive application will satisfy the stringent requirements for the filing of a second or successive petition, not the possibility that the claims will ultimately warrant a decision in favor of the applicant." *Id*. at 282 (citations and quotation

-9-

omitted). Other circuits have issued decisions touching on this point as well. *See, e.g.*, *In re Joshua*, 224 F.3d 1281, 1282 n.2 (11th Cir. 2000) (noting apparent merits deficiencies of claim raised under § 2244(b)(2)(A), but excluding them from authorization inquiry "because they are not relevant to whether [the movant] can obtain permission to bring a second or successive § 2255 motion to vacate"); *In re Salazar*, 443 F.3d 430, 434 n.2 (5th Cir. 2006) (raising question "whether, in our role as 'gatekeeper' under [§ 2244(b)] we have the statutory authority to deny a motion for authorization" on basis that underlying claim is time-barred).

The State nevertheless argues that the "prima facie showing" required by § 2244(b)(3)(C) must refer to the merits of the underlying claim because there is nothing else it could refer to and statutory language should not be construed to be meaningless. We disagree. The point of the language is to make it clear that the authorization provided by an appellate court under § 2244(b)(3)(C) is only a preliminary determination that a claim satisfies the statutory conditions; it is for the district court, under § 2244(b)(4), to confirm that "the petition d[oes], in fact, satisfy the requirements of § 2244(b)" when it hears the case (and to summarily dismiss if the requirements are not met). *LaFevers v. Gibson*, 238 F.3d 1263, 1265 (10th Cir. 2001). This assessment–when done preliminarily by an appellate court or conclusively by the district court–is not meaningless simply because it precedes consideration of the merits of the claim. To say that it is meaningless is to say that the statutory constraints on second or successive petitions are toothless,

-10-

a point belied by the denial of countless motions under § 2244(b). And while there is a more in-depth, evidentiary inquiry for the authorization of an innocence claim under § 2244(b)(2)(B), *see supra* note 4, the authorization of a new-rule-of-law claim under § 2244(b)(2)(A) requires us to determine that (a) the rule relied on reflects a sufficient departure from precedent to entail a new rule; (b) the Supreme Court has made the rule retroactive to cases on collateral review (by no means always a cut-and-dried matter, *see, e.g.,* cases discussing *Atkins'* retroactivity *supra* note 2); and (c) the nature and timing of the new rule and the petitioner's procedural history show that the rule was "previously unavailable" within the meaning of the statute. As both the substance and frequent consequence of this inquiry reflect, our implementation of the prima facie showing requirement is not meaningless.

In sum, the plain language of the statute directs us to focus solely on the conditions Congress has designated as controlling with respect to the authorization of second or successive habeas petitions. And those conditions specified in § 2244(b)(2)(A) for the pursuit of claims resting on new rules of constitutional law do not involve the appellate court in any preliminary assessment of the merit of the claims for which second or successive authorization is sought.

## 2. Showing of Mental Retardation for *Atkins* Claim

Our conclusion that Congress did not include a preliminary merits review in the authorization inquiry under § 2244(b)(2)(A) directly undercuts the State's opposition to Mr. Ochoa's *Atkins* claim. The State insists that Mr. Ochoa must make a prima facie showing of mental retardation before he may proceed on this claim. That is a paradigmatic example of injecting the merits of a claim into the authorization inquiry: the petitioner's mental retardation *is* the *Atkins* claim; the constitutional validity of a petitioner's capital sentence hinges entirely on that single premise. For the reasons explained above, resolving Mr. Ochoa's motion for § 2244(b) authorization on the basis that he has or has not demonstrated the strength of this central element of his case would take us outside the authority with which we are invested by the statute. Development and resolution of the mental retardation issue is, rather, the province of the district court in the proceedings we properly authorize on the distinct grounds specified in § 2244(b)(2)(A).

We are aware of some case authority, relied on by the State, requiring a prima facie showing of mental retardation before allowing a petitioner to proceed on an *Atkins* claim under § 2244(b)(2)(A). As explained below, this case law derives from a misapplication of an innocence-related principle derived from a seminal § 2244(b)(2)(B) case, a confusion we have carefully tried to avoid. *See supra* note 4. More fundamentally, this case law focuses singularly on *Atkins* claims, to the exclusion of the larger implications of merits review in the second

-12-

or successive context, and as a consequence does not address the broader textual and structural considerations underpinning our decision here.

Shortly after passage of the statutory scheme under review, the Seventh Circuit addressed the "prima facie showing" language in § 2244(b)(3)(C) and, consistent with what we have said, related it to whether "it appears reasonably likely the application satisfies the stringent requirements *for the filing of a second or successive petition.*" *Bennett v. United States*, 119 F.3d 468, 469-70 (7th Cir. 1997) (emphasis added). Moreover, in discussing the district court's confirmation of that determination under § 2244(b)(4), *Bennett* disassociated it from the merits of the claim for which authorization is sought: "[T]he district court must dismiss the motion that we have allowed the applicant to file, *without reaching the merits of the motion*, if the court finds that the movant has not satisfied the requirements for the filing of such a motion." *Id.* at 470 (emphasis added). But the claim in *Bennett* involved new evidence of innocence, so the court properly assessed the strength of that evidence to determine whether it made "a sufficient showing of possible merit to warrant a fuller exploration by the district court." *Id.* at 469. It is this formulation of the prima facie showing requirement, divorced from the rest of the court's discussion and imported into the § 2244(b)(2)(A) context where there is no evidentiary component, that has given rise to the anomalous treatment of *Atkins* claims in some cases.

-13-

When the Fifth Circuit was presented with a motion seeking authorization for a newly recognized *Atkins* claim under § 2244(b)(2)(A), it relied on *Bennett* to require the petitioner not only to satisfy the conditions specified in the statute but also to make an evidentiary showing that he was in fact mentally retarded. *In re Morris*, 328 F.3d 739, 740-41 (5th Cir. 2003). The *Morris* court did not offer any rationale tied to the statute for adding the merits component to the authorization inquiry. Rather, it just cited *Bennett's* definition of the prima facie showing language as requiring a "sufficient showing of possible merit to warrant a fuller exploration by the district court." *Id.* at 740 (quotation omitted). The Eleventh Circuit promptly followed *Morris*, adopting *Bennett's* formulation and holding that authorization for an *Atkins* claim was proper only "if petitioner's proofs, when measured against the entire record in this case, establish a reasonable likelihood that he is in fact mentally retarded." *In re Holladay*, 331 F.3d at 1174. The Sixth Circuit adopted the same approach, following *Holladay* and *Bennett*, in *In re Bowling*, 422 F.3d 434, 436 (6th Cir. 2005), *cert. denied*, 126 S. Ct. 1353 (2006).

As explained above, *Bennett's* formulation regarding a "showing of possible merit to warrant a fuller exploration by the district court" had an apt referent in the context of § 2244(b)(2)(B), i.e., the condition that new evidence demonstrates the petitioner's innocence. But the *Bennett* formulation is misused if relied on in the § 2244(b)(2)(A) context as the premise for a preliminary merits inquiry having no basis in the conditions set out in that section.

-14-

We recognize that there is another concern underlying efforts to inject a merits-related element in the authorization inquiry for *Atkins* claims: "otherwise, then literally any prisoner under a death sentence could bring an *Atkins* claim in a second or successive petition regardless of his or her intelligence." *In re Holladay*, 331 F.3d at 1173 n.1. But, as a policy rationale for including merits review as part of the § 2244(b) authorization process (albeit peculiarly limited to *Atkins* claims), this is an argument for amendment of the statute, which is the province of Congress, not the courts. Moreover, it is not a very compelling point, given the narrow category of cases our decision today affects. It would have more weight if carried to its logical conclusion, i.e., to a broad proposal for merits screening per se. But in that event it would seem a redundant measure, since under Rule 4 of the Rules Governing § 2254 Cases the district courts already engage in a merits screening of all habeas petitions. And reassigning that role to the appellate courts seems ill-conceived as an institutional matter, as we lack the means that a trial court has to develop and dispose of often fact-intensive claims. Indeed, the extensive analyses required of courts that engage in merits screening of *Atkins* claims, often difficult to distinguish from full-scale merits review, belies the idea that this is a simple threshold inquiry appropriate for summary treatment by an appellate court. *See, e.g.*, *In re Salazar*, 443 F.3d at 432-34; *In re Bowling*, 422 F.3d at 437-39; *In re Holladay*, 331 F.3d at 1174-76.

Based on satisfaction of the conditions specified in § 2244(b)(2)(A), we GRANT Mr. Ochoa authorization to pursue a second or successive habeas petition raising an *Atkins* challenge to his death sentence. This decision is not appealable and may not be the subject of a petition for rehearing or for a writ of certiorari. 28 U.S.C. § 2244(b)(3)(E).