**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 27, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

FRANK DEITERMAN,

　　　　　　　Petitioner-Appellant,

v.

STATE OF KANSAS; ROGER
WERHOLTZ, Secretary of
Corrections; DAVID MCKUNE,
Warden, Lansing Correctional
Facility; ATTORNEY GENERAL OF
KANSAS,

　　　　　　　Respondents-Appellees.

No. 08-3031
(D.C. No. 5:05-CV-03398-CM)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **PORFILIO**, and **ANDERSON**, Circuit Judges.

　　　　Petitioner-appellant Frank Deiterman, a Kansas state prisoner represented

by retained counsel, appeals the memorandum and order entered by the district

court denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254.

---

[*]　After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

After considering Mr. Deiterman's application for a certificate of appealability (COA) under 28 U.S.C. § 2253, we previously granted a COA on the following issues: "Whether performance of [trial] counsel for petitioner was (1) deficient under *Strickland v. Washington*[,] 466 U.S. 668 (1984), and (2) if counsel's performance was deficient, was it prejudicial." Order of May 27, 2008, at 1.

Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253, we affirm the district court's denial of habeas relief on Mr. Deiterman's claims that his trial counsel performed deficiently because counsel failed to renew a motion for a change of venue after jury voir dire and failed to present additional alibi witnesses at trial. Recognizing that Mr. Deiterman's claim that his trial counsel had a conflict of interest presents an ineffective assistance claim that is separate and distinct from the claims of deficient performance on which we granted a COA, we deny Mr. Deiterman's request for a COA on the conflict of interest claim and dismiss that portion of this appeal. Finally, because he failed to present them to the district court, we decline to consider Mr. Deiterman's claims that he is entitled to habeas relief because his trial counsel failed to act as an advocate, undermined his credibility, and committed prejudicial cumulative errors based on counsel's deficient performance, and we therefore dismiss those claims as well.[1]

---

[1] If Mr. Deiterman desires to pursue new claims not included in his original § 2254 petition, he must first seek authorization from this court to file a second or successive habeas petition in accordance with 28 U.S.C. § 2244(b)(3)(A).

# I. BACKGROUND.

Mr. Deiterman was convicted by a jury in a Kansas state district court of capital murder, conspiracy to commit capital murder, and aggravated robbery. He was sentenced to life imprisonment with the possibility of parole in 40 years on the first count, 154 months imprisonment on the second count, and 51 months imprisonment on the third count, with each sentence to run consecutively. The facts of Mr. Deiterman's crimes were recounted in detail by the Kansas Supreme Court in his direct appeal, *State v. Deiterman*, 29 P.3d 411, 413-14 (Kan. 2001), and we will not repeat those facts here.

In his direct appeal, Mr. Deiterman raised ten issues relating to venue, evidentiary matters at trial, and sentencing, but the Kansas Supreme Court affirmed each of his convictions and sentences. *Id.* at 413, 423. Mr. Deiterman then filed a motion in the trial court for post-conviction relief under Kan. Stat. Ann. § 60-1507, raising four issues: (1) his trial counsel provided ineffective assistance; (2) his trial counsel had a conflict of interest because counsel was related to the murder victim; (3) the prosecutor withheld exculpatory evidence; and (4) his due process rights were violated because two of the State's witnesses lied. After conducting an evidentiary hearing, the trial court denied Mr. Deiterman's post-conviction motion. Mr. Deiterman then appealed to the Kansas Court of Appeals, which affirmed the denial of post-conviction relief in an unpublished memorandum opinion. *Deiterman v. State*, No. 91,489, 2005 WL

400408 (Kan. App. Feb. 18, 2005) (per curiam) (unpublished).  Subsequently, in June 2005, the Kansas Supreme Court summarily denied Mr. Deiterman's petition for review of the denial of post-conviction relief.

In October 2005, Mr. Deiterman filed his federal habeas petition under 28 U.S.C. § 2254 in the district court.  In his petition, Mr. Deiterman claimed that his trial counsel provided ineffective assistance, relying on three areas of alleged deficient performance by counsel: (1) the failure to renew a motion for a change of venue upon completion of jury voir dire; (2) the failure to request that the trial court instruct the jury panel to disregard certain prejudicial statements that were made by potential jurors during voir dire; and (3) the failure to adequately investigate potential alibi witnesses and present additional alibi witnesses at trial.  Mr. Deiterman also claimed that his trial counsel provided ineffective assistance because counsel was related to the murder victim and therefore had a conflict of interest.[2]  In January 2008, the district court entered a memorandum and order denying habeas relief on each of Mr. Deiterman's ineffective assistance claims, and this appeal followed.

In his brief on appeal, Mr. Deiterman asserts the following ineffective assistance claims: (1) "trial counsel was constitutionally ineffective by

_____

[2]  In addition to his ineffective assistance claims, Mr. Deiterman also asserted a number of other claims in his habeas petition.  He has abandoned those claims in this appeal, however, and we therefore do not need to address them.

-4-

intentionally tainting the jury against Deiterman and then failing to renew the motion for a change of venue"; (2) "trial counsel was constitutionally ineffective by failing to present alibi witnesses on Deiterman's behalf"; (3) "trial counsel was constitutionally ineffective by laboring under a conflict of interest without disclosing the conflict to Deiterman"; (4) "trial counsel was constitutionally ineffective by failing to act as an advocate on Deiterman's behalf and by undermining Deiterman's credibility"; and (5) "trial counsel's cumulative errors prejudiced Deiterman and denied him of his right to effective assistance of counsel and his right to a fair trial." Amended Aplt. Br. at 7, 12, 25, 21, 28 (altered to lower case letters). As set forth below, we conclude that there is no basis for habeas relief on Mr. Deiterman's first, second, and third ineffective assistance claims, and that his last two claims were not properly preserved for purposes of this appeal.

## II. STANDARD OF REVIEW.

"Because [Mr. Deiterman] filed his federal habeas petition well after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), AEDPA's provisions apply to this appeal." *Johnson v. Mullin*, 505 F.3d 1128, 1133 (10th Cir. 2007), *cert. denied*, 128 S. Ct. 2933 (2008). We recently explained the key aspects of those provisions as follows:

> "Under AEDPA, the appropriate standard of review depends on whether a claim was decided on the merits in state court." [*McLuckie v. Abbott*, 337 F.3d 1193, 1197 (10th Cir. 2003)]. "If the

-5-

claim was not heard on the merits by the state courts, and the federal district court made its own determination in the first instance, we review the district court's conclusions of law de novo and its findings of fact, if any, for clear error." *Id.* (internal quotations omitted). If, however, the claim was adjudicated on the merits by the state courts, the petitioner will be entitled to federal habeas relief only if he can establish that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.*, § 2254(d)(2). "When reviewing a state court's application of federal law, we are precluded from issuing the writ simply because we conclude in our independent judgment that the state court applied the law erroneously or incorrectly." *McLuckie*, 337 F.3d at 1197. "Rather, we must be convinced that the application was also objectively unreasonable." *Id.* "This standard does not require our abject deference, . . . but nonetheless prohibits us from substituting our own judgment for that of the state court." *Snow v. Sirmons*, 474 F.3d 693, 696 (10th Cir. 2007) (internal quotation marks omitted).

*Johnson*, 505 F.3d at 1133-34. In addition, in accordance with 28 U.S.C. § 2254(e)(1), we presume that a state court's factual findings are correct unless a petitioner rebuts the presumption of correctness by clear and convincing evidence. *See House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008).

## III. DEFICIENT PERFORMANCE CLAIMS UNDER *STRICKLAND*.

As set forth above, Mr. Deiterman's first and second ineffective assistance claims allege deficiencies in his trial counsel's performance. Regardless of the standard of review that governs this appeal (*i.e.*, AEDPA deference or de novo/clear error), "we must examine [Mr. Deiterman's deficient performance] claims under the well-established framework set forth in *Strickland v.*

-6-

*Washington*, 466 U.S. 668 (1984), asking whether (a) his counsel's performance was constitutionally deficient, and (b) the deficient performance prejudiced the defense, depriving him of a fair proceeding with a reliable result."  *Gonzales v. Tafoya*, 515 F.3d 1097, 1122 (10th Cir.), *petition for cert. filed* (U.S. June 9, 2008) (No. 08-5021) (parallel citation omitted).

> Under the deficient performance prong, [Mr. Deiterman] must show that his counsel's performance fell below an objective standard of reasonableness in that it was outside the range of competence demanded of attorneys in criminal cases.  Under the prejudice prong, [Mr. Deiterman] must show that but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* (quotations omitted).

As the Supreme Court explained in *Strickland*, however, it is not necessary "to address both components of the inquiry if the defendant makes an insufficient showing on one."  466 U.S. at 697.

> In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Id.*

-7-

# IV. ANALYSIS.

## A. Failure to Renew Motion for Change of Venue.

In Mr. Deiterman's direct appeal, the Kansas Supreme Court summarized

its standard of review for motions to change venue:

> "The determination of whether to change venue is entrusted to the sound discretion of the trial court; its decision will not be disturbed on appeal absent a showing of prejudice to the substantial rights of the defendant. [Citation omitted.] The burden is on the defendant to show prejudice exists in the community, not as a matter of speculation, but as a demonstrable reality. The defendant must show that such prejudice exists in the community that it was reasonably certain he or she could not have obtained a fair trial. [Citation omitted.]"

*Deiterman*, 29 P.3d at 415 (quoting *State v. Anthony*, 898 P.2d 1109, 1116 (Kan.

1995)) (alterations in original). Applying these principles, the Court concluded

that the trial court did not abuse its discretion when it denied the initial motion

for a change of venue that Mr. Deiterman's trial counsel filed before jury voir

dire:

> The trial court denied the motion for a change of venue, finding that the defense had failed to meet its burden to show that Deiterman's rights would be substantially prejudiced by not changing the venue.
>
> The defense pointed to articles from newspapers in Joplin, Missouri, and Pittsburg, Kansas, but none were from the local Columbus, Baxter Springs, or Galena newspapers. The articles reflected facts that were shown in the charging documents and during trial proceedings of all the codefendants. Two articles used language that was inflammatory but was qualified as comments made by prosecutorial witnesses and not represented as pure fact in stating: "Prosecutors presented testimony that Deiterman was the

-8-

blood-thirsty trigger-man in the killing. . . . Deiterman's lawyers counter that he has been set up by his co-conspirators."

The defense failed to produce affirmative evidence that public opinion had actually been swayed in Cherokee County by these reports. As is well established in Kansas law, "[m]edia publicity alone has never established prejudice per se." *State v. Cravatt*, 979 P.2d 679 [,695] ([Kan.] 1999). The trial court did not abuse its discretion in denying Deiterman's initial motion.

*Deiterman*, 29 P.3d at 415 (parallel citation omitted).

In the state post-conviction proceedings, Mr. Deiterman claimed, as he claims in this appeal, that his trial counsel provided ineffective assistance in failing to renew the change of venue motion after the completion of jury voir dire. The Kansas Court of Appeals adjudicated this claim on the merits and denied post-conviction relief on the change of venue issue. Consequently, the question before us is whether the highly deferential standards of review set forth in 28 U.S.C. § 2254(d) bar habeas relief on Mr. Deiterman's change of venue claim, and we conclude that they do.

In its opinion affirming the denial of post-conviction relief, the Kansas Court of Appeals began its analysis of the merits of Mr. Deiterman's ineffective assistance claims by noting that such claims are analyzed by applying the two-pronged "deficient performance" and "prejudice" inquiry adopted by the Kansas Supreme Court in *Chamberlain v. State*, 694 P.2d 468 (1985). *See Deiterman*, 2005 WL 400408, at *3 (citing *Chamberlain*, 694 P.2d at 472-74). This two-pronged inquiry is derived from the United States Supreme Court's

decision in *Strickland*. *See Chamberlain*, 694 P.2d at 475 (adopting *Strickland*'s "holdings as the prevailing yardstick to be used in measuring the effectiveness of counsel under the Sixth Amendment").

Next, the court addressed the merits of Mr. Deiterman's change of venue claim, noting that "Deiterman complains that [his trial counsel] was deficient when he failed to renew their change of venue motion, since nearly all of the people on the [jury] panel admitted that they had heard of [the victim's] murder." *Deiterman*, 2005 WL 400408, at *3. The court also noted that Mr. Deiterman was specifically relying on statements made by two members of the jury panel during voir dire, and it quoted their statements at length. *Id.* at *3-5. The court then concluded that Mr. Deiterman's change of venue claim was without merit, beginning its discussion with a quote from the post-conviction findings of the trial court:

> In dealing with this issue the trial court when ruling on the [post-conviction] motion stated:
>
> "[W]e were able to impanel a jury the first day of trial relatively smoothly. But, frankly, had I had some concern that you were not going to get a fair trial after listening to the responses and questions by Court and counsel, I could have addressed that issue sua sponte on my own and I wouldn't have had any hesitation in doing that obviously because you must be given a fair trial. I didn't think there was any problem picking the jury . . . . The jury was impaneled with little, if any, issues. So I am finding that that issue is not significant."

Deiterman concedes the jurors who were impaneled assured counsel they could be impartial. The jury panel members all remained silent when defense counsel asked if it were not possible to decide the case based on what was introduced into evidence. An officer who responded to the scene of the crime was immediately excused. Those who indicated that they knew the victim's family well and could not set aside personal feelings were dismissed.

Neither party contends that it was difficult to impanel the jury; the jury was impaneled in 1 day. . . .

The record shows substantial competent evidence supports the trial judge's finding that Deiterman's claims about venue did not merit a new trial.

*Id.* at \*5 (second and third alterations in original).

Although the Kansas Court of Appeals' final conclusion regarding the merits of Mr. Deiterman's change of venue claim is not specifically framed in terms of one or both of the *Strickland* prongs, we believe the court's analysis is best treated as a legal determination that Mr. Deiterman failed to establish a reasonable probability that his trial counsel would have succeeded on a renewed change of venue motion. As such, we conclude that the court's adjudication of this claim was neither contrary to nor an objectively unreasonable application of *Strickland*'s prejudice prong, as viewed in the context of the governing Kansas law concerning motions to change venue. Mr. Deiterman has also made no showing that the court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28

-11-

U.S.C. § 2254(d)(2). We therefore affirm the denial of habeas relief on the change of venue claim.

One final point merits discussion. As noted above, Mr. Deiterman has asserted a new argument in this appeal in support of his change of venue claim that he did not assert in the state courts or the federal district court, namely that his trial counsel intentionally tainted the jury during voir dire.[3] *See* Amended Aplt. Br. at 7-12. While we could dispose of this argument based on Mr. Deiterman's failure to preserve it in the district court proceedings, we will address it on the merits since it is tied to Mr. Deiterman's change of venue claim, which he did assert below, and is easily resolved in that context. Simply put, with only one relevant exception, each of the venire-member statements that Mr. Deiterman relies on in his opening brief to support his "tainting" argument were made in response to questions from the trial judge or the prosecutor, not his trial counsel. *See* Aplt. App. at I-135-37 (Juror Danny Jacquinet responding to questions from prosecutor), I-110 (Juror Orvall Smith responding to questions

---

[3]     Although Mr. Deiterman argued in the state post-conviction proceedings that his trial counsel intentionally tainted the jury during voir dire, he made this argument to support a separate claim, which he has not asserted in this appeal, that his trial counsel was ineffective in failing to request that the trial court instruct the jury panel to disregard certain prejudicial statements that were made by potential jurors during voir dire. *See Deiterman*, 2005 WL 400408, at *5-6. The Kansas Court of Appeals rejected Mr. Deiterman's arguments, concluding that counsel's questions to the jury panel were "certainly not an attempt to taint the jury panel" and that Mr. Deiterman had "failed to establish the need for an instruction to have been given to the panel." *Id.* at *6.

from trial judge), I-155 (Juror Ronald Jenkins responding to questions from trial judge).[4] The one exception is venire member Thomas Dietz, but Mr. Dietz's statement that a local newspaper article "swayed" him towards believing that Mr. Deiterman was guilty of the murder, *id.* at I-149, is insufficient, by itself, to support a claim that Mr. Deiterman's trial counsel intentionally tainted the jury. Most importantly, trial counsel did not ask Mr. Dietz to describe the specific contents of the newspaper article, and, in response to further questioning from trial counsel, Mr. Dietz acknowledged that he could decide the case based on "what goes on here [at trial]." *Id.* at I-150.

## B. Failure to Investigate and Present Additional Alibi Witnesses.

In the state post-conviction proceedings, Mr. Deiterman claimed, as he claims in this appeal, that his trial counsel provided ineffective assistance in failing to adequately investigate potential alibi witnesses and present additional alibi witnesses at trial. The Kansas Court of Appeals adjudicated this claim on the merits and denied post-conviction relief on Mr. Deiterman's claim regarding alibi witnesses. We therefore apply the highly deferential standards of review in 28 U.S.C. § 2254(d) in reviewing this claim.

---

[4] Although Mr. Deiterman also notes that Juror Gary Collins stated, in response to questioning from his trial counsel, that "[s]omebody is guilty," Amended Aplt. Br. at 9 and Aplt. App. at I-151, Mr. Collins gave no indication that he felt predisposed to find Mr. Deiterman guilty. As a result, Mr. Collins' response does not support Mr. Deiterman's claim that his trial counsel intentionally tainted the jury during voir dire.

-13-

In its opinion affirming the denial of post-conviction relief, the Kansas Court of Appeals summarized the evidence regarding potential alibi witnesses that was presented at the post-conviction evidentiary hearing conducted by the trial court. *Deiterman*, 2005 WL 400408, at *2, *8-9. Because Mr. Deiterman has failed to rebut any of the factual findings contained in the court's summary by clear and convincing evidence, we presume they are correct. *See* 28 U.S.C. § 2254(e)(1).

Addressing the merits of Mr. Deiterman's claim regarding alibi witnesses, the Kansas Court of Appeals concluded that Mr. Deiterman had failed to establish that his trial counsel's performance in investigating and calling alibi witnesses was deficient. *Deiterman*, 2005 WL 400408, at *9-10. The court's conclusion is well supported by the testimony that was presented at the post-conviction evidentiary hearing.

To begin with, as the court found, the potential witnesses that Mr. Deiterman identified either could not provide any helpful information (*i.e.*, the bar patrons in Waco, Texas and the residents of the McClarity home) or were not called to testify at trial for sound strategic reasons (*i.e.*, the mechanic, Jeremy, who was related to the people who owned the guns that were stolen and used in the murder and Matt Snokhous, an inmate serving time in prison). *Id.* at *8-9. Also, while Mr. Deiterman's sister-in-law testified that she "saw Deiterman almost every day during the time of the murder" and she "recalled being

-14-

awakened by Deiterman around 1 a.m. to talk about girlfriend problems on one of the nights in question," the court noted that this testimony was of dubious value since "when Deiterman testified at trial regarding his alibi, he did not recount the events provided by [his sister-in-law]." *Id.* at *9. Lastly, the court pointed out that while "Deiterman also maintain[ed] that [his trial counsel] failed to investigate and interview witnesses who resided near his father's house who he believed could have provided testimony to undermine [the trial testimony of his co-conspirators]," the court rejected his contentions regarding these alleged witnesses because "Deiterman did not include any affidavits in his [post-conviction] motion nor [did] he point to any evidence presented at the [evidentiary] hearing to substantiate this argument." *Id.*

We conclude that Mr. Deiterman has failed to show that the Kansas Court of Appeals' adjudication of his claim regarding alibi witnesses was contrary to or an objectively unreasonable application of *Strickland* or that it involved an unreasonable determination of the facts in light of the evidence presented at the post-conviction evidentiary hearing. In sum, we agree with respondents that Mr. Deiterman's trial counsel "conduct[ed] an objectively reasonable investigation, and made objectively reasonable strategic and tactical decisions based on that investigation." Aplees. Br. at 18-19. Moreover, Mr. Deiterman "has failed to identify any evidence that his counsel would have discovered had he conducted further investigation that would have likely changed the outcome of

-15-

the trial.  Thus, [Mr. Deiterman] has failed to establish either prong of the *Strickland* test with respect to this claim."  *Id.* at 19.

## C.  Alleged Conflict of Interest.

As recognized by the Kansas Court of Appeals in its post-conviction decision, "[t]he Sixth Amendment right to the assistance of counsel further guarantees a right to conflict-free counsel."  *Deiterman*, 2005 WL 400408, at *10 (citing *Mickens v. Taylor*, 535 U.S. 162, 179 (2002)).  Importantly, this right, though conceptually related, is separate and distinct from the right to effective performance of counsel that is analyzed under the two-pronged *Strickland* test, and it is governed by different standards.  Thus, whereas a criminal defendant must affirmatively prove prejudice to succeed on an actual ineffectiveness claim based on deficient performance, *Strickland*, 466 U.S. at 693, "prejudice is presumed when counsel is burdened by an actual conflict of interest," *id.* at 692.  As the Supreme Court has explained, however, this is not a "*per se* rule of prejudice."  *Id.*  Instead, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'"  *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350, 348 (1980)).

In both his habeas petition and the brief that he submitted to this court, Mr. Deiterman asserted a conflict of interest ineffectiveness claim that is separate and distinct from his deficient performance claims.  R., Vol. 1, Doc. 1 at 18;

Amended Aplt. Br. at 25-28. As noted above, however, we granted Mr. Deiterman a COA only as to his deficient performance claims. *See* Order of May 27, 2008, at 1 (granting a COA on claims governed by the two-pronged test under *Strickland* for deficient performance claims ). Consequently, we must now determine whether Mr. Deiterman "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), with respect to his conflict of interest claim. We conclude that he has not.

Mr. Deiterman claims that his trial counsel had a conflict of interest because he was related to the murder victim, Patrick Livingston. However, based on the testimony that was presented at the post-conviction evidentiary hearing, the Kansas Court of Appeals made a specific factual finding that no family relationship existed between trial counsel and Mr. Livingston, and that, as a result, "there is no conflict of interest here." *Deiterman*, 2005 WL 400408, at *11. As the court explained:

> We also do not see a family relationship here. Patrick Livingston's great-great-grandfather was also the great-grandfather of Bill Livingston who was married to [trial counsel's] former wife's aunt. [Trial counsel] did not know the victim nor any members of the victim's immediate family.

*Id.* at *10.

Mr. Deiterman has failed to rebut these factual findings by clear and convincing evidence, and we therefore agree with the Kansas Court of Appeals

-17-

that Mr. Deiterman's trial counsel did not have an actual conflict of interest. As a result, we decline to grant a COA on this claim.

### D. Remaining Claims That Were Not Asserted in District Court.

In his brief on appeal, Mr. Deiterman argues that he is entitled to habeas relief because his trial counsel failed to act as an advocate, undermined his credibility, and committed prejudicial cumulative errors based on counsel's deficient performance. Amended Aplt. Br. at 21-25, 28-29. He did not include these claims in his federal habeas petition, however, and he never sought leave to amend his petition to include them.[5] Accordingly, the claims were not presented to the district court, and we therefore decline to consider them. *See Tele-Communications, Inc. v. Comm'r*, 104 F.3d 1229, 1232 (10th Cir. 1997) ("Generally, an appellate court will not consider an issue raised for the first time on appeal."); *see also Parker v. Scott*, 394 F.3d 1302, 1307 (10th Cir. 2005) (declining to consider additional ineffective assistance of counsel claims that habeas petitioner did not to present to district court); *Jones v. Gibson*, 206 F.3d 946, 958 (10th Cir. 2000) (declining to consider cumulative error argument that habeas petitioner did not make in his revised habeas petition). We also note that Mr. Deiterman must obtain prior authorization from this court under 28 U.S.C.

---

[5]  Although Mr. Deiterman asserted a cumulative error claim in his habeas petition, it was limited to "the cumulative errors identified in [his] direct appeal," R., Vol. 1, Doc. 1 at 17, which did not include any ineffective assistance of counsel claims.

§ 2244(b)(3)(A) before he can pursue any new substantive claims as part of a second or successive habeas petition. *See generally Ochoa v. Sirmons*, 485 F.3d 538, 540-41 (10th Cir. 2007) (holding that authorization is required from this court under 28 U.S.C. § 2244(b) whenever habeas petitioner is seeking to raise new substantive claims after district court has adjudicated prior habeas action filed by same petitioner).

## V.  CONCLUSION.

For the reasons set forth herein, we **AFFIRM** the district court's denial of habeas relief on Mr. Deiterman's claims that his trial counsel provided ineffective assistance because counsel failed to renew a motion for a change of venue after jury voir dire and failed to present additional alibi witnesses at trial. We **DENY** Mr. Deiterman's request for a COA on his claim that his trial counsel was ineffective because counsel had a conflict of interest, and we **DISMISS** that portion of this appeal. Finally, we **DISMISS** Mr. Deiterman's claims that he is entitled to habeas relief because his trial counsel failed to act as an advocate, undermined his credibility, and committed prejudicial cumulative errors based on counsel's deficient performance on the ground that he failed to raise them in his federal habeas petition.

Entered for the Court

Jerome A. Holmes
Circuit Judge