[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12538

_____

In re: OCTAVIOUS WILLIAMS,

Petitioner.

_____

Application for Leave to File a Second or Successive
Habeas Corpus Petition, 28 U.S.C. § 2244(b)

_____

Before WILSON, MARTIN, and JILL PRYOR, Circuit Judges.

B Y   T H E   P A N E L:

We sua sponte vacate our order in this case dated July 13, 2018 and replace it with this published order.

Pursuant to 28 U.S.C. § 2244(b)(3)(A), Octavious Williams has filed an application seeking an order authorizing the district court to consider a second or successive petition for a writ of habeas corpus. Such authorization may be granted only if:

1

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2). "The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection." *Id.* § 2244(b)(3)(C); *see also Jordan v. Sec'y, Dep't of Corrs.,* 485 F.3d 1351, 1357-58 (11th Cir. 2007) (explaining that this Court's determination that an applicant has made a *prima facie* showing that the statutory criteria have been met is simply a threshold determination).

Section 2244(b)(1) of Title 28, however, provides that "a claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." 28 U.S.C. § 2244(b)(1). A "claim" remains the same so long as "[t]he basic thrust or gravamen of [the applicant's] legal argument is the same." *In re Hill*, 115 F.3d 284, 294 (11th Cir. 2013). For applications requesting authorization to file a second or successive petition pursuant to § 2254, this Court has consistently applied § 2244(b)(1) to prohibit the filing of a claim that is the same as a claim presented in a petitioner's

2

initial habeas petition before the district court. *See In re Everett,* 797 F.3d 1282, 1291 (11th Cir. 2015); *In re Mills,* 101 F.3d 1369, 1370 (11th Cir. 1996).

Court records show that Williams was convicted in 2001 following a jury trial. Following a series of events not relevant to the present application, he filed, in 2007, his original § 2254 petition, *pro se.* In it, he raised a number of claims, including ground two, labeled "ineffective assistance of trial counsel; denial of right to impartial trial; *biase[d] judge,*" and ground three, labeled "ineffective assistance of trial counsel; *biase[d] judge.*" In support, he argued that his state court trial judge engaged in "improper acts" reflecting bias, that his trial attorney knew about those acts but did nothing, and that counsel was therefore ineffective by not moving for recusal. The district court ultimately found that Williams's § 2254 petition was untimely, and denied it with prejudice.

In his *pro se* application, Williams indicates that he wishes to raise one claim in a successive § 2254 petition. He argues that trial counsel was ineffective "because the trial court judge was biased against him." He concedes that he raised this claim in a prior petition, but contends that it relies on a new rule of constitutional law. However, he does not provide a citation to support that contention. And he also concedes that his claim does not rely on newly discovered evidence.

3

Williams's application fails for two reasons. First, Williams raised an "ineffective assistance of counsel - biased judge" claim in his original § 2254 petition. Thus, to the extent that the gravamen of the claims is the same, his current claim is precluded by section 2244(b)(1) and "shall be dismissed." 28 U.S.C. § 2244(b)(1); *In re Mills,* 101 F.3d at 1370.

Second, even if Williams's current claim is not precluded by § 2244(b)( 1), he still has not made a *prima facie* showing that he would be entitled to relief. Although Williams contends that his claim relies on a new rule of constitutional law, he has failed to cite or otherwise identify a case that would support his claim. Thus, he does not satisfy § 2244(b)(2)'s criteria.

Accordingly, Williams's application is DISMISSED to the extent that it is barred by *In re Mills* and 28 U.S.C. § 2244(b)(1), and DENIED to the extent that it is not.

WILSON, Circuit Judge, with whom MARTIN and JILL PRYOR, Circuit Judges, join, specially concurring:

I write this special concurrence in light of the rule recently adopted by a panel of this court in *United States v. St. Hubert*, 883 F.3d 1319, 1328–29 (11th Cir. 2018) ("[W]e now hold in this direct appeal that law established in published three-judge orders issued pursuant to 28 U.S.C. § 2244(b) in the context of applications for leave to file second or successive § 2255 motions are binding precedent on *all* subsequent panels of this Court, including those reviewing direct appeals and collateral attacks.").

\* \* \* \* \*

On May 5, 2016, federal inmate Markson Saint Fleur used a typewriter at the Federal Correctional Institution in Bennettsville, South Carolina to complete his Application for Leave to File a Second or Successive Motion to Vacate, Set Aside, or Correct a Sentence under 28 U.S.C. § 2255. After briefly reciting his conviction and procedural history, he typed out his legal argument: forty-three words, with citations to two Supreme Court cases.[1] He signed the form and placed it in the mail. We received it four days later, on May 9. Although Saint Fleur served the United States, the government did not file a response. In fact, nothing else was filed on our docket.

---

[1] *See* Emergency Application at 5, *In re Saint Fleur*, 824 F.3d 1337 (11th Cir. 2016) (per curiam) (No. 16-12299), ECF No. 1.

5

The motions panel[2] reached its decision on this application thirty days later, on June 8, 2016, as required by statute.  Based on these forty-three words of argument, the panel majority wrote an order denying the application and designated it for publication in the Federal Reporter.  Holding for the first time in the Eleventh Circuit that Hobbs Act robbery "clearly qualifies as a 'crime of violence' under the use-of-force clause in [18 U.S.C.] § 924(c)(3)(A)," the panel found that Saint Fleur could not make a prima facie showing under 28 U.S.C. § 2255(h).  *In re Saint Fleur*, 824 F.3d at 1340–41.  Sixteen days later—in another published order and under similar circumstances[3]—the same motions panel, partially relying upon *In re Saint Fleur*, found that aiding and abetting Hobbs Act robbery also "clearly qualifies" as a crime of violence under the use-of-force clause.  *In re Colon*, 826 F.3d at 1305.  Saint Fleur and Colon had no avenues of review available: Per statute, panel orders of this type cannot be reviewed by the Supreme Court and may not be the subject of a petition for rehearing en banc.

---

[2] In this special concurrence, I use "merits panel" to refer to a three-judge panel hearing appeals from the argument or non-argument calendar.  I use "opinion" to refer to an opinion issued by a merits panel.  I use "motions panel" to refer to a panel deciding upon motions, including whether to grant an application for leave to file a second or successive motion.  I use "panel order" to refer to an order issued by a motions panel.

[3] This time, petitioner-inmate Edgar Amado Colon, Jr. had a Federal Public Defender fill out his form.  Perhaps because she had access to word-processing software (as opposed to Saint Fleur's prison typewriter), the attorney was able to fit ninety-eight words of argument and two Supreme Court citations onto our form.  *See* Emergency Application at 5, *In re Colon*, 826 F.3d 1301 (11th Cir. 2016) (per curiam) (No. 16-13021), ECF No. 1.  Once again, there was nothing else filed on our docket in Colon's case, apart from the Federal Defender's appearance of counsel form.

The *St. Hubert* panel, in a direct appeal from a criminal conviction—with full briefing, oral argument by attorneys on both sides, and no thirty-day time limit—held that *In re Saint Fleur* and *In re Colon* bound it as prior panel precedent.  With only panel orders and a generic citation to our prior-panel-precedent rule for support, the *St. Hubert* panel explicitly held:

> Lest there be any doubt, we now hold in this direct appeal that *law established in published three-judge orders* issued pursuant to 28 U.S.C. § 2244(b) in the context of applications for leave to file second or successive § 2255 motions *are binding precedent on all subsequent panels of this Court*, including those reviewing direct appeals and collateral attacks, "unless and until [they are] overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc."

*United States v. St. Hubert*, 883 F.3d 1319, 1329 (11th Cir. 2018) (alteration in original) (emphasis added) (citation omitted).

So after *St. Hubert*, published panel orders—typically decided on an emergency thirty-day basis, with under 100 words of argument (often written by a pro se prisoner), without any adversarial testing whatsoever, and without any available avenue of review—bind all future panels of this court.

This is the first time that this court has held as much in a published merits opinion on direct appeal.  Such a holding raises numerous institutional concerns for our Circuit, and this court should not have adopted it. But, unfortunately, we have.

\* \* \* \* \*

7

Congress has delegated to the circuit courts a gatekeeping role when reviewing second or successive petitions under §§ 2244 and 2255.  *See* 28 U.S.C. §§ 2244(b)(2)–(3), 2255(h).  Generally, these sections provide that before filing a second or successive application, a petitioner must move this court "for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A).  We may review such petitions only for whether they contain:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

*Id.* § 2255(h).  During this review, "we do not make any factual determinations."  *Jordan v. Sec'y, Dept. of Corr.*, 485 F.3d 1351, 1357 (11th Cir. 2007).  Rather, the statute permits us only to determine "whether the petitioner has made out a prima facie case of compliance with [its] requirements."  *Id.* at 1358.  We have only thirty days to rule, 28 U.S.C. § 2244(b)(3)(D), and our resultant panel order "shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari." *Id.* § 2244(b)(3)(E).

In this Circuit, we require non-death second or successive petitioner-inmates to use a form that we provide.  11th Cir. R. 22-3(a).  This form

8

prohibits petitioners from additional briefing or attachments, and requires all argument to take place "concisely in the proper space on the form."  For each claim, the current version of the form provides a 1" x 5.25" space in which to state a "ground on which you now claim that you are being held unlawfully." It then provides a 7.25" x 5.25" space in which to "summarize briefly the facts supporting [this] ground."  And for legal arguments, the form provides a 2.5" x 5.25" space in which to assert that a claim "rel[ies] on a 'new rule of constitutional law,'" and an 8" x 5.25" space in which to assert that a claim "rel[ies] on newly discovered evidence."

These applications are often decided without counseled argument from the petitioner, and are always decided without an opposing brief from the government, except for death-penalty-related applications.  We also rarely have access to the whole record.  *See generally Jordan*, 485 F.3d at 1357–58 (describing the limitations we face when deciding these applications).  When making these determinations, therefore, the panel typically races to issue an unappealable order based solely on the arguments of a pro se prisoner constrained to a little over one page per ground.[4]

---

[4] For example, the petitioner in this case, Octavious Williams, did not even have the correct form or access to a typewriter. *See* Emergency Application, *In re Williams*, No. 18-12538 (11th Cir. Jun. 15, 2018), ECF No. 1. He filled out the form with a pen and wrote thirteen words of argument. *Id.* at 5. Nothing else was filed on our docket, and we issued an order twenty-eight days later. It defies belief that the court would want orders resulting from this process to bind all merits panels.

9

Conversely, when we decide a merits appeal, we have essentially unlimited time to decide the case, there are usually attorneys on both sides, we have extensive briefing, and we have the entire record in front of us (including an order from the court below). And the large majority of our published merits opinions come from our oral argument calendar, where attorneys for each party argue for at least fifteen minutes. Of course, after a merits opinion issues, aggrieved parties may petition for panel rehearing, for rehearing en banc, or for a writ of certiorari.

Despite this stark contrast in process, published panel orders and published opinions now enjoy the same precedential heft, equally binding future panels of this court unless and until overruled by the court sitting en banc. In fact, published panel orders perhaps have *greater* weight, because they may not be appealed to the Supreme Court and they may not be the subject of a petition for rehearing en banc. We should not elevate these hurriedly-written and uncontested orders in this manner.

\* \* \* \* \*

Other circuits do not operate this way. First, and perhaps most importantly, other circuits simply do not publish panel orders with anywhere near the frequency that we do. In the last five years, we have published forty-

10

five second or successive panel orders, while all of the other circuits combined have published eighty.

Second, all of our sister circuits that have definitively spoken on the matter do *not* consider themselves constrained by the thirty-day time limit for deciding a second or successive petition.[5] We have once tried to so hold, but—in what appears to be the only time a panel order has been taken en banc in this Circuit (via an ad hoc process)—we reversed ourselves. *See In re Johnson*, 814 F.3d 1259, 1262 (11th Cir. 2016) (per curiam), *vacated*, 815 F.3d 733 (11th Cir. 2016) (en banc). In line with this, judges in this Circuit consider themselves bound by the thirty-day limit, and we dispose of "virtually every one of the thousands" of applications under §§ 2244 and 2255 "(at least 99.9% of them)" within thirty days.[6] *See also In re Henry*, 757 F.3d 1151, 1157 n.9 (11th Cir. 2014) ("[T]his Court necessarily must apply § 2244(b)(2) under a tight time limit in all cases, since the statute expressly requires us to resolve

---

[5] The First, Second, Third, Fourth, Sixth, Seventh, Ninth, and Tenth Circuits have all held that they are not strictly bound by the thirty-day rule. *See Moore v. United States*, 871 F.3d 72, 77–78 (1st Cir. 2017); *Johnson v. United States*, 623 F.3d 41, 43 n.3 (2d Cir. 2010); *In re Hoffner*, 870 F.3d 301, 307 n.11 (3d Cir. 2017); *In re Williams*, 330 F.3d 277, 281 (4th Cir. 2003); *In re Siggers*, 132 F.3d 333, 335 (6th Cir. 1997); *Gray-Bey v. United States*, 201 F.3d 866, 867 (7th Cir. 2000); *Ezell v. United States*, 778 F.3d 762, 765 (9th Cir. 2015); *Browning v. United States*, 241 F.3d 1262, 1263 (10th Cir. 2001). While the Fifth Circuit has an unpublished order noting that it is "statutorily required to 'grant or deny the authorization to file a second or successive application not later than 30 days after the filing of the motion,'" *In re White*, 602 F. App'x 954, 956 n.2 (5th Cir. 2015) (citation omitted), it does not appear to have so held in a published opinion. It does not appear as though the Eighth or D.C. Circuits have opined on the issue.

[6] Eleventh Circuit General Order No. 43, at 2 (2018), http://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/GeneralOrder43.pdf.

this application within 30 days, *no matter the case*." (emphasis added)).[7] This extremely compressed timeline can lead to odd results that we would likely not accept in a merits appeal. *See, e.g.*, *In re Sapp*, 827 F.3d 1334 (11th Cir. 2016) (per curiam) (published, unsigned panel order followed by a three-judge special concurrence); *see also, e.g.*, *In re Armstrong*, No. 18-10948 (11th Cir. Apr. 3, 2018) (per curiam) (unsigned panel order followed by three single-judge special concurrences).

Third, even in non-death cases, many other circuits often consider briefing from the government before issuing a published order; some also entertain oral argument from both parties.[8] We never grant oral argument in

---

[7] We recently ignored our now-binding precedent in *In re Henry* by holding all second or successive applications in abeyance in the wake of *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). *See* Eleventh Circuit General Order No. 43, *supra* note 6; *see also, e.g.*, *In re Ratliff*, No. 18-12760 (11th Cir. Jul. 2, 2018), ECF No. 2 (clerk of court holding application in abeyance pursuant to General Order 43). Setting aside the fact that a General Order decides no case or controversy and cannot overrule a now-binding published order, it does not change my point: we almost always decide these applications within thirty days ("at least 99.9%" of the time), while other circuits do not hold themselves to that rigid deadline. And, remember, we once tried to dismiss *In re Henry* as dicta and hold that we are not bound by the deadline, *In re Johnson*, 814 F.3d at 1268, but the en banc court vacated that order. 815 F.3d at 733.

[8] *E.g.*, *Evans-Garcia v. United States*, 744 F.3d 235 (1st Cir. 2014) (orally argued); *In re Pendleton*, 732 F.3d 280, 282 (3d Cir. 2013) (per curiam) (noting there was "extensive briefing and oral argument"); *In re Hubbard*, 825 F.3d 225 (4th Cir. 2016) (orally argued); *In re Williams*, 806 F.3d 322 (5th Cir. 2015) (government brief filed); *In re Patrick*, 833 F.3d 584 (6th Cir. 2016) (government brief filed); *Dawkins v. United States*, 829 F.3d 549 (7th Cir. 2016) (per curiam) (government brief filed); *Donnell v. United States*, 826 F.3d 1014 (8th Cir. 2016) (government brief filed); *Ezell v. United States*, 778 F.3d 762 (9th Cir. 2015) (government brief filed). To be sure, there are instances where other circuits have published orders without government briefing or oral argument. But the fact that our non-death published second or successive orders *always* issue without hearing from the government—combined with our adherence to the thirty-day limit and propensity for publication—stands far outside the norm.

12

non-death second or successive petitions.  And, having reviewed the thirty-nine non-death published second or successive orders for which docket information is readily available, I was unable to locate *any* docket on which the United States filed an individualized brief prior to the published order's issuance.[9]

So, procedurally speaking,[10] we have the worst of three worlds in this Circuit.  We publish the most orders; we adhere to a tight timeline that the other circuits have disclaimed; and we, unlike most circuits, do not ever hear from the government before making our decision.

But, despite these shortcomings, published panel orders not only now bind all panels of this court—they are also unreviewable.  28 U.S.C. § 2244(b)(3)(E).  Litigants may not bring mistakes to the court's attention through petitions for rehearing or petitions for rehearing en banc.  *Id.*  Even the Supreme Court is powerless to review our decision on a second or successive application.  *Id.*  Notably, we think that we have the authority to sua sponte rehear an order en banc, *see In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015)

---

[9] The United States filed its so-called "standing brief" regarding *Johnson* issues on eleven of these dockets.  *See, e.g.*, Memorandum of the United States Regarding Applications for Leave to File Second or Successive § 2255 Motion Based on *Johnson v. United States*, *In re Starks*, 809 F.3d 1211 (11th Cir. 2016) (per curiam) (No. 15-15493), ECF No. 2.  This brief does not respond to the particular arguments made by the petitioner.  With respect to three of the dockets, the government filed briefing particular to the petitioner's application, but only *after* the published order had issued.  The government filed nothing in the remaining dockets reviewed.

[10] This special concurrence speaks only to the procedural infirmities abundant in this Circuit's second or successive process. There are myriad substantive maladies as well. These are explained in Judge Martin's thoughtful special concurrence, which I join in full.

13

(per curiam) (published panel order attempting to defend precedential status of published panel orders), and we have done so once before, *see In re Johnson*, 815 F.3d 733 (11th Cir. 2016) (en banc) (vacating earlier published panel order), but we have no Eleventh Circuit procedures or rules codifying some kind of procedure to do so.

Thus, if we make a mistake in a published panel order—which seems quite likely, given the rushed, information-devoid, nonadversarial nature of the proceeding—the best a petitioner can hope for is that someone on the court notices and sua sponte requests a poll for rehearing en banc, following an unknown, rarely-tested procedure to do so.  Otherwise, the erroneous order binds all future litigants in this Circuit.

* * * * *

Of course, much of the foregoing comes as a necessary result of the sheer volume of second or successive applications that this Circuit decides. Between 2000 and 2017, we decided 10,565 applications, disposing of at least 300 each year—3,588 coming in the wake of *Johnson* between the years of 2015 and 2017.  I do not suggest that we have oral argument or even government briefing in each of these proceedings; such a rule would overwhelm this court, especially in light of our unique respect for the thirty-day time limit.

14

But these serious limitations in the decision-making process should make us reluctant to allow these orders to control the outcome in fully briefed and argued merits appeals. And at the very least, the decision to let these panel orders bind us should have been made by the full court by way of Circuit Rule. However, the *St. Hubert* panel disagreed, and it promulgated its preferred rule in a published opinion.

Now that the *St. Hubert* panel has imposed its will on the entire court, however, I hope that we will at least add Circuit Rules to mitigate the damage to whatever extent possible. Our court needs guidance on when panel orders can be published, *cf.* 11th Cir. R. 36 & I.O.P. 2–9 (outlining publication parameters for opinions, not orders), and on the procedures surrounding calling for an en banc poll on a published order, *cf.* Fed. R. App. P. 35; 11th Cir. R. 35 & I.O.P. 1–9 (specifying en banc polling procedures that revolve around the issuance of a mandate, which does not occur for panel orders in the Eleventh Circuit). Finally, due to the new paradigm in which any panel order may be considered for publication, we should require *all* orders issuing from this court to clearly state their publication status, just as we do for opinions. This will eliminate any ambiguity as to the precedential weight to which an order is entitled.

* * * * *

15

Our country's legal system "assumes that adversarial testing will ultimately advance the public interest in truth and fairness." *Polk Cty. v. Dodson*, 454 U.S. 312, 318 (1981). Indeed, in other contexts, we disfavor nonadversarial ex parte proceedings because they "conflict with a fundamental precept of our system of justice." *In re Paradyne Corp.*, 803 F.2d 604, 612 (11th Cir. 1986). The rule that this court adopted in *St. Hubert* takes the opposite view: it gives precedential weight to orders resulting from prisoners' abbreviated applications, decided without a government response, in thirty days, in an unappealable manner. In doing so, we are running counter to all other circuits. The *St. Hubert* panel gave no justification for this, except that published orders should bind if they are "squarely about [a] legal issue." *St. Hubert*, 883 F.3d at 1328. This is no justification at all, especially in light of the institutional concerns noted above. This court should not allow these orders to bind merits panels, and I hope that we will reconsider this ill-advised rule in the future.

16

MARTIN, Circuit Judge, with whom WILSON and JILL PRYOR, Circuit Judges, join, specially concurring:

I join Judge Wilson's special concurrence, which eloquently brings to life how this court has turned a mere screening duty, assigned to federal courts of appeals by 28 U.S.C. § 2244(b)(3), into a rich source of precedent-producing opinions that is depriving inmates of a process that could reveal them to be wrongfully incarcerated. This is a process our court has debated in recent years, and it is one I have certainly come to care about. See United States v. Seabrooks, 839 F.3d 1326, 1349–50 (11th Cir. 2016) (Martin, J., concurring); In re McCall, 826 F.3d 1308, 1311–12 (11th Cir. 2016) (Martin, J., concurring). Regrettably, this court has now made things tougher for inmates who seek to have courts examine the legitimacy of their incarceration, by holding that published orders on motions to file second or successive applications are binding on all future appellate panels. United States v. St. Hubert, 883 F.3d 1319, 1328–29 (11th Cir. 2018). And as Judge Wilson points out, our court is issuing these precedent setting opinions without the benefit of adversarial testing, because we are mandated to rule within thirty days of the inmate's filing, and we routinely do so based only on a form filled out by the inmate alone. Our method for conducting this screening function affects scores of people serving long sentences in Alabama, Florida, and Georgia. I share Judge Wilson's hope that our court reconsiders this practice going forward.

17

In addition to sharing Judge Wilson's views, I write separately to highlight how this court's use of rulings on prisoners' mere requests to file a second or successive application to create binding precedent goes far beyond the prima facie examination called for by the statute.[1]  The job of courts of appeals in screening these motions was never meant to include merits decisions about whether an inmate is properly serving a (sometimes significantly) longer sentence because his criminal history includes crimes of violence or violent felonies under the elements clauses of 18 U.S.C. § 924(c)(3)(A) and (e)(2)(B)(i).

## I.

When an inmate who has already once asked for habeas relief comes to believe there is a legal flaw in the sentence he is serving, the statute requires him to get permission from our court before he can go back to District Court to seek relief.  In asking us for that permission, by way of a motion filed in our court, the prisoner briefly summarizes why he should be allowed to file a second or successive application.  And when his request is based on a new rule of constitutional law, the statute makes our review of this request quite narrow.  Our role is to "certif[y]" when the inmate makes "a prima facie showing" that the

---

[1] Although I do not find it the most natural fit, I use the terminology of the statute to distinguish "motions," which are requests filed in the courts of appeals for permission to file a second or successive application seeking relief from a prison sentence.  Section 2244 refers to the actual filing that seeks relief, the § 2254 petitions and § 2255 motions filed in district courts, as the "applications," and I will do so as well.  See 28 U.S.C. §§ 2244, 2254, 2255.

18

proposed application will "contain . . . a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. §§ 2244(b)(3)(C), 2255(h).[2]

Although our inquiry is narrow, there are a couple of things required of us. First, we look to identify whether the prisoner is seeking relief based on a "new rule of constitutional law." 28 U.S.C. § 2255(h)(2). Second, we look to see if that new rule has been "made retroactive to cases on collateral review by the Supreme Court." Id. Our court has referred to these two requirements as the "minimum showing" necessary to file a second or successive application. In re Holladay, 331 F.3d 1169, 1173 (11th Cir. 2003).[3]

A second or successive § 2255 motion must also identify, or "contain," this new constitutional rule. 28 U.S.C. § 2255(h). The exact meaning of this requirement is unsettled across the circuits. In Holladay, this court held that a "requisite showing" was "a sufficient showing of possible merit to warrant a fuller

---

[2] Motions for leave to file a second or successive § 2254 application must make a similar showing that the application "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2244(b)(2)(A) (emphasis added); see also In re Arnick, 826 F.3d 787, 789 n.2 (5th Cir. 2016) (Elrod, J., dissenting) (discussing the Fifth Circuit's holding that the provisions establish identical legal standards).

[3] Most of the published decisions from other circuits applying the gatekeeping function in the context of new rules of constitutional law address these two questions. See, e.g., Ezell v. United States, 778 F.3d 762, 767 (9th Cir. 2015) (holding Descamps v. United States, 570 U.S. 254, 133 S. Ct. 2276 (2013), did not announce a new rule of constitutional law); In re Payne, 733 F.3d 1027, 1029 (10th Cir. 2013) (holding Alleyne v. United States, 570 U.S. 99, 133 S. Ct. 2151 (2013), announced a new rule of constitutional law but had not been made retroactive on collateral review by the Supreme Court).

19

exploration by the district court." 331 F.3d at 1173–74 (adopting the standard set in Bennett v. United States, 119 F.3d 468, 469 (7th Cir. 1997)). We elaborated that "if in light of the documents submitted with the application it appears reasonably likely that the application satisfies the stringent requirements for the filing of a second or successive petition, we shall grant the application." Id. at 1173 (quotations omitted and alterations adopted).

Very few opinions from our circuit or others grapple with the meaning of "prima facie showing" or what it means to "contain" a new rule of constitutional law. The few that do agree that the statute establishes a permissive standard that does not require any analysis of a claim's merits. See Ochoa v. Sirmons, 485 F.3d 538, 541–42 (10th Cir. 2007) (per curiam) ("This statutory mandate does not direct the appellate court to engage in a preliminary merits assessment. Rather, it focuses our inquiry solely on the conditions specified in § 2244(b) that justify raising a new habeas claim . . . ."). In this vein, the Third Circuit stated that whether an application "relies on" a new rule cannot be based on "whether the claim has merit, because [the Third Circuit does] not address the merits at all in [its] gatekeeping function." In re Hoffner, 870 F.3d 301, 308 (3d Cir. 2017). And in the Fifth Circuit, Judge Elrod, writing in dissent, observed that "where the movant seeks a non-frivolous extension of a new rule of constitutional law that the Supreme Court

20

has made retroactive, our review should be complete." In re Arnick, 826 F.3d 787, 791 (5th Cir. 2016) (Elrod, J., dissenting) (emphasis omitted).

The plain language of the statute shows that it sets a less demanding standard for allowing a second or successive application than for allowing appeals from rulings of District Courts in habeas corpus proceedings. I have pointed to the different standards set by the statute in the past. In re Saint Fleur, 824 F.3d 1337, 1343 (11th Cir. 2016) (Martin, J., concurring). In order to appeal District Court rulings on a habeas corpus proceeding, the statute requires either a District or Circuit judge to certify that the inmate has "made a substantial showing of the denial of a constitutional right" and indicate which "issue or issues satisfy" this requirement. 28 U.S.C. § 2253(c)(2)–(3). This certification, which an inmate must have for a habeas appeal, is designated by the statute as a Certificate of Appealability. 28 U.S.C. § 2253(c)(1). And this certification contrasts with the motion seeking "[p]ermission to file a second or successive § 2255 petition [which] merely requires a 'prima facie showing' that [the] petition will 'contain a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court.'" Saint Fleur, 824 F.3d at 1343 (Martin, J., concurring) (alterations adopted) (quoting 28 U.S.C. §§ 2244(b)(3)(C), 2255(h)(2)). The plain meaning of the text of the statute "invites even less of an inquiry into the merits of the proposed claim than the standard for a" Certificate of Appealability. Id.

21

Congress was well aware of the effect of the standard for getting a Certificate of Appealability, when in the same Act, it chose to adopt a textually less demanding standard for motions for leave to file second or successive applications.  See Slack v. McDaniel, 529 U.S. 473, 483, 120 S. Ct. 1595, 1603 (2000) (explaining that AEDPA largely codified the standard for granting certificates of probable cause announced in Barefoot v. Estelle, 463 U.S. 880, 894, 103 S. Ct. 3383, 3395 (1983)); Bennett, 119 F.3d at 469 (referring to the lack of guidance from "statutory language or history or case law" on the prima facie showing standard adopted in AEDPA).

Consistent with the statute's command, our sister circuits have largely refrained from deciding the merits of a particular applicant's claim at the motion stage.  See, e.g., Morris v. United States, 827 F.3d 696, 699 (7th Cir. 2016) (Hamilton, J., concurring in the grant of an application) ("I think the best course for now, in this and similar cases where application of ACCA depends on an attempt conviction, is to grant the application to allow further development of the attempt issue in the district courts.");  In re Williams, 759 F.3d 66, 70–71 (D.C. Cir. 2014) ("The government's argument concerning the application of the new rule in Graham [v. Florida, 560 U.S. 48, 130 S. Ct. 2011 (2010)] to this case, i.e., how Graham applies to a case concerning a crime that straddled the age of majority, is a question for the district court in the first instance, not the court of

22

appeals."). So although the exact meaning of "contain" as used in § 2255(h) is not settled law, it is clear that "the merits" of a proposed claim "are not relevant to whether [the applicant] can obtain permission to bring a second or successive § 2255 motion." In re Joshua, 224 F.3d 1281, 1282 n.2 (11th Cir. 2000) (per curiam). It is hard to measure the harm done in recent years to inmates sentenced in this circuit by this court's failure to heed this prohibition.

## II.

After Welch v. United States, 578 U.S. ___, 136 S. Ct. 1257 (2016), over two thousand inmates filed motions with this court seeking relief because the residual clause of the Armed Career Criminal Act was invalidated in Johnson v. United States, 576 U.S. ___, 135 S. Ct. 2551 (2015). In most all of these thousands of post-Welch motions, inmates asserted they were serving sentences, made longer due to their criminal history, including prior convictions which had been deemed "violent" by the sentencing judge. Our job was to decide whether each of these inmates made the prima facie showing that their application "contain[ed]" the new rule of constitutional law announced in Johnson. It seemed clear that any given application failed to "contain" a Johnson claim when it did nothing more than cite Johnson. In re Thomas, 823 F.3d 1345, 1348 (11th Cir. 2016) (per curiam). But see Ochoa, 485 F.3d at 545 (referencing "efforts to inject a merits-related element" into the § 2244(b)(2) review, but recognizing this would

23

require an "amendment of the statute, which is the province of Congress, not the courts."). But because Johnson was so recently decided, we had little precedent about whether the criminal history of these inmates still qualified them as violent offenders after the demise of the residual clause. So in ruling on this mass of motions, our court had to decide whether to allow an inmate to proceed to District Court for evaluation (i.e., grant his motion) where no binding precedent dictated whether his predicate crime should have resulted in a longer sentence. Also, we had to decide the extent to which we ourselves should try and reimagine an inmate's original sentencing, now with the punitive statute rewritten as per Johnson.

In answering these questions, our guiding star should have been the "text and context" of §§ 2244(b)(C)(3) and 2255(h) as well as "equity." Hoffner, 870 F.3d at 308–09. But despite the narrow role given us by those statutes, when our court receives Johnson motions, I've observed that we "comb[] through sealed records from the prisoner's original sentence hearing and go[] ahead to make a decision about whether the prisoner will win if we let him file his § 2255 motion in district court." In re Clayton, 829 F.3d 1254, 1257 (11th Cir. 2016) (Martin, J., concurring). Ultimately our court ruled to require us to decide the merits of whether the inmate had been more harshly sentenced based on the surviving parts of the Armed Career Criminal Act, as opposed to the portion that was invalidated

24

by the Supreme Court in Johnson. See, e.g., Thomas, 823 F.3d at 1349 (denying a motion for a second or successive § 2255 motion after looking back to the sentencing record to say that the District Court did not rely on the portion of the Armed Career Criminal Act invalidated by the Supreme Court in Johnson). This test is simply more demanding than the prima facie showing called for under the statute. See Saint Fleur, 824 F.3d at 1343 (Martin, J., concurring); Ochoa, 485 F.3d at 546 (holding that the only relevant question is "the satisfaction of the conditions specified in § 2244(b)(2)(A)"). By adopting this practice, this court routinely rejects motions from inmates who believe they are serving sentences unlawfully prolonged based on a statute that has now been declared unconstitutional.

Our court entered hundreds of orders denying motions based on this merits inquiry, thus touching many lives. Most perniciously, by my count, this court has published eight opinions going beyond the prima facie showing standard to hold (for the first time, and now thanks to St. Hubert, in a binding and precedential decision) that a particular crime was a "crime of violence" or a "violent felony" under the elements clauses in § 924(c)(3)(A), (e)(2)(B)(i), or United States Sentencing Guideline § 4B1.2(a). See In re Hines, 824 F.3d 1334, 1337 (11th Cir. 2016) (per curiam) (bank robbery in violation of 18 U.S.C. § 2113(a), (d)); Saint Fleur, 824 F.3d at 1341 (Hobbs Act robbery); In re Colon, 826 F.3d 1301, 1305

(11th Cir. 2016) (per curiam) (aiding-and-abetting Hobbs Act robbery); In re

Smith, 829 F.3d 1276, 1280 (11th Cir. 2016) (per curiam) (carjacking in violation

of 18 U.S.C. § 2119); In re Watt, 829 F.3d 1287, 1290 (11th Cir. 2016) (per

curiam) (aiding-and-abetting assaulting a postal employee); In re Sams, 830 F.3d

1234, 1239 (11th Cir. 2016) (per curiam) (bank robbery in violation of 18 U.S.C. §

2113(a));  In re Burgest, 829 F.3d 1285, 1287 (11th Cir. 2016) (per curiam)

(Florida manslaughter and kidnapping).[4]  This practice has continued as recently as

this past March.  In In re Welch, 884 F.3d 1319 (11th Cir. 2018), a panel held, as a

matter of first impression, that Alabama first degree robbery and Alabama first

degree assault categorically qualify as violent crimes under the elements clause of

the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(i).  Id. at 1324.  This led

to the panel's holding that Mr. Welch "has three prior qualifying ACCA

convictions that survive Johnson's invalidation of the residual clause, which means

that his application fails to make a prima facie showing that he is entitled to relief

under Johnson."  Id. at 1325.  The court that sentenced Mr. Welch had no

opportunity to consider his claim that Johnson entitled him to relief.

---

[4] Some of these decisions were issued over a dissent, which would ordinarily require oral argument under this circuit's rules.  See 11th Cir. R. 34-3(b)(3); see also Colon, 826 F.3d at 1308 (Martin, J., dissenting) ("Deciding the merits of not-yet-filed § 2255 motions in this way is especially dangerous in cases like Mr. Colon's that turn on a complex question of first impression."); Smith, 829 F.3d at 1285 (Jill Pryor, J., dissenting) ("We certainly have never held that the [carjacking] statute would qualify categorically even setting aside the residual clause in § 924(c). It would be impractical and imprudent to decide this complex question in the first instance here.").

This circuit's practice of ruling on motions in such a way as to create binding precedent that a given conviction must count as a "crime of violence" or a "violent felony" for federal sentencing purposes is an outlier from the practice of other circuits.[5]  This practice also reflects a split among circuits about how to perform the gatekeeping function of §§ 2244(b)(3)(C) and 2255(h). Compare Ochoa, 485 F.3d at 543, with In re Williams, 826 F.3d 1351, 1357 (11th Cir. 2016) (declining to grant a motion where the applicant "made a prima facie showing under Johnson as to Count 3" but could not show "that he would 'benefit' from Johnson, since he received a concurrent mandatory life sentence on Count 1 that . . . is unaffected by Johnson").  And this circuit's outlier status is particularly worrisome in this context, where the statute denies prisoners the ability to seek review by way of an appeal or a writ of certiorari to the Supreme Court.  See 28 U.S.C. § 2244(b)(3)(E).  In light of this limitation and the lack of uniformity among federal appeals courts, this issue may be the proper subject for certifying a question to the Supreme Court about the correct application of the prima facie showing standard.  See 28 U.S.C. § 1254(2) (permitting certified questions from courts of appeals); Felker v. Turpin, 518 U.S. 651, 667, 116 S. Ct. 2333, 2342

---

[5] I've found only two published decisions from other circuits that made similar decisions on second or successive applications.  In re Irby, 858 F.3d 231, 234 (4th Cir. 2017); Dawkins v. United States, 809 F.3d 953, 954, 956 (7th Cir. 2016).  In Dawkins, Judge Ripple dissented, arguing that the application "raise[d] an important question" that should be "address[ed] more carefully than the time constraints statutorily imposed on [] consideration of motions under 28 U.S.C. § 2244(b)(3)(B) permit."  Id. at 956 (Ripple, J., dissenting).

27

(1996) (Souter, J., concurring) (suggesting a certified question would be appropriate "if the courts of appeals adopted divergent interpretations of the gatekeeper standard" of § 2244(b)).

In the meantime, we compound these problems by making decisions on motions for leave to file second or successive applications binding precedent outside of that context.  Already now, as a result of St. Hubert's holding and the eight erroneous decisions I've identified above, all judges of this court are prohibited from giving inmates the type of merits review of their sentences that inmates routinely receive in other circuit courts of appeal.